## THE GOLDEN ROD.

### THE HAROLD J. McCARTY.

(District Court, S. D. New York. April 18, 1906.)

1. COLLISION—EAST RIVER—RULE REQUIRING VESSELS TO KEEP AT DISTANCE FROM PIERS.

The rule requiring vessels passing up or down the East river to keep away from the ends of the piers cannot be invoked in a suit for collision by a vessel which was also transgressing it.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, § 185.]

2. SAME—VESSELS MEETING—TAKING UNNECESSARY RISK.

A schooner in tow of a tug was passing down East river near the Manhattan piers with another tug with a car float also passing down a short distance outside when a water boat coming out from a slip ahead of them in attempting to pass up between the two tows came into collision with the schooner and was injured. Held, on the evidence that the schooner was not chargeable with any fault, but that the collision was due to the fault of the water boat in attempting to pass through the narrow space between the tows when she could safely have passed across their bows to the outside or remained in the slip until they had passed.

In Admiralty. Suit for collision.

Peter S. Carter, for libellant.
James J. Macklin, for the Golden Rod.
Wing, Putnam & Burlingham, for the Harold J. McCarty.

ADAMS, District Judge. This action was brought by Alexander Wilson, owner of the steam water boat Caledonia, against the steam-tug Golden Rod and the schooner Harold J. McCarty, to recover the damages sustained through a collision with the schooner in tow of the said tug on a hawser of about 50 fathoms in length, on the 27th day of January, 1904, about 3 o'clock in the afternoon. The collision happened off about pier 13, a short distance, about 150 or 200 feet, outside of the general line of the end of the piers. It occurred shortly below pier 14, which extends considerably, 100 feet or more, beyond pier 13 and the other piers in the vicinity. The Caledonia was proceeding up the East River from pier 9. The tug and schooner were proceeding down the river, the schooner being bound to sea. She had some sail set to obtain the aid of a favoring wind from the northward. They had at first been on the Brooklyn side of the river but crossed over in the vicinity of the Brooklyn Bridge to avoid some ice in the eastern part of the river below the bridge. Outside of the tow was the tug Long Island, with a car float in tow on her port side, bound from Long Island City to Jersey City.

The principal fault urged against the tug is that she kept too close to the Manhattan shore. It is true that she was nearer than the law ordinarily permits but such fact does not appear to have been a contributing fault to the collision. When the Caledonia came out from pier 9, instead of crossing the Long Island's bow and seeking a course outside of the tows, she turned in between them and sought to find an avenue there. She claims that there was a distance of from 300

to 500 feet between the tows, so that she had plenty of room to pursue such a course, but that is very doubtful. The evidence satisfies me that there was much less, but however that may be, the Caledonia was also navigating without regard to the rule requiring vessels bound up or down the river, to keep away from the ends of the piers. It was held in The Clara and The Reliance, 55 Fed. 1021, 1023, 5 C. C. A. 390, and elsewhere, in considering an alleged fault of the same character, that the fault was a remote one and not a proximate cause of the disaster. It certainly can not be invoked where the injured vessel was also transgressing the rule.

It is urged against the schooner that instead of following the tug, she sheered out from the Manhattan shore the whole length of her hawser and thus collided with the Caledonia. The credible testimony does not sustain the claim. It appears that the schooner was following the Golden Rod without much deviation from the former's course and sheered no more than might reasonably have been expected.

The real cause of the collision seems to have been the improper navigation of the Caledonia in attempting to pass between the tows. She would probably have encountered ice outside of the float and, if fearful of collision therewith, should have waited until the tows had passed before attempting to go up the river. Instead of pursuing that safe course, she turned in between the tows, when there was only navigable space there of from 60 to 80 feet, and in doing so, it is alleged, first struck the Long Island and then bounded off and ran into the schooner, by which contact she received the damages for which she claims recovery. The Long Island claims that she saw her coming and ported her own helm to avoid collision but did not succeed. Whether the fact is that the Caledonia first struck the Long Island and then collided with the schooner, or that the initial collision was with the latter, it is not necessary to determine, as in taking the course between the vessels she assumed an unnecessary risk and ventured into danger which could have been easily avoided. Even if the collision was caused by a sheer of the schooner, the evidence does not satisfy me that there was any more than was unavoidable. Not having taken the safe course which was open to her, the water boat must bear the consequences.

Libel dismissed.